'08 CIV 5712

351-08/PJG/BGC
FREEHILL HOGAN & MAHAR,LLP
Attorneys for Plaintiff
W-O MARINE PTE. LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Barbara G. Carnevale (BC 1651)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

W-O MARINE PTE. LTD.,

                                    Plaintiff,

        - against –

TRADHOL INTERNACIONAL S.A.
a/k/a TRADHOL INTERNATIONAL, SPAIN,

                                    Defendant.
-------------------------------------------------------------x

08 Civ_____ (    )


**<u>VERIFIED COMPLAINT</u>**


        Plaintiff, W-O MARINE PTE. LTD. (hereinafter "W-O MARINE"), by its attorneys

Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant TRADHOL

INTERNACIONAL S.A. a/k/a TRADHOL INTERNATIONAL, SPAIN, (hereinafter

"TRADHOL"), alleges upon information and belief as follows:

        1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

of charter party.  This case also falls under this Court's admiralty and maritime jurisdiction

pursuant to 28 U.S.C. §1333.  Jurisdiction is also proper pursuant to the Court's federal question

jurisdiction pursuant to 28 U.S.C. §1331.  Federal jurisdiction also exists because the action

arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral

Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.   At all times relevant hereto, Plaintiff W-O MARINE was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 1 Maritime Square #11-05A, Harbour Front Centre, Singapore 099253.

3.   At all times relevant hereto, Defendant TRADHOL was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an office and place of business at Ctra. de Humera, 43-28224, Pozuelo de Alarcon, Madrid, Spain.

4.   On or about November 20, 2007, Plaintiff W-O MARINE, as owner, and Defendant TRADHOL, as charterer, entered into a maritime contract of charter party on an amended ASBATANKVOY form for the use and operation of the M/T W-O HANHAN (a copy of the "recap" dated November 20, 2007 including Defendant TRADHOL's Additional Shipping Terms and Clauses is annexed hereto as Exhibit A).

5.   Pursuant to the terms of the charter party, the vessel arrived at Guayabal to load a cargo of ethanol and proceeded thereafter to Cienfugos.

6.   While the vessel was at Cienfugos, Defendant TRADHOL instructed Plaintiff W-O Marine to return to the first load port, Guayabal, to load the balance of the cargo at that port.

7.   Accordingly, Defendant TRADHOL drafted an addendum to the charter party regarding same (included in Exhibit A annexed hereto).

8.   Following the second loading at Guayabol, the vessel returned to Cienfugos to load the balance of cargo at that port.

9.   During the performance of the charter party, Defendant TRADHOL incurred demurrage and additional charges for which it is liable to Plaintiff W-O Marine under the terms of the charter party.

10. The demurrage incurred by Defendant TRADHOL amounts to $172,822.71 and the additional charges incurred include:

      a) costs with respect to the call at Guayabal.... $35,708.94;

      b) cost of additional War Risk.... $8,607.10; and

      c) Taxi Charges.... $790.00.

11. The total outstanding amount due Plaintiff W-O Marine therefore is $217,928.75.

12. In breach of the charter party and despite due demand by Plaintiff W-O MARINE, Defendant TRADHOL has failed and otherwise refused to pay the demurrage and additional charges despite same being due and owing presently.

13. Plaintiff W-O MARINE has fulfilled all obligations required of it under the Charter Party.

14. The charter party provides for the application of English Law and any dispute arising thereunder is to be referred to arbitration at London, and Plaintiff W-O MARINE specifically reserves its right to arbitrate the substantive matters at issue.

15. This action is brought to obtain jurisdiction over the Defendant, security in favor of Plaintiff W-O MARINE in respect to its claims against Defendant and in aid of the London Arbitration proceedings and to compel Defendant's appearance in the arbitration.

16. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorneys' fees, arbitrators' fees, disbursements and interest are recoverable as part of Plaintiff's claim.

17. This action is further brought to obtain security for the additional sums which are recoverable including Plaintiff's anticipated attorneys' and arbitrators' fees and costs in the London arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

18. Plaintiff estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting the claim in London arbitration will be $90,000, and interest on its damages are estimated to be $38,137.52 (calculated at the rate of 7% for a period of 2.5 years, the estimated time for completion of the proceedings in London) including any appeal of any arbitration award issued. Further, and to the extent further breaches may occur when additional hire becomes due, Plaintiff reserves the right to amend the Complaint and seek additional security in respect to any further breaches.

## Request for Rule B Relief

19. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia,* cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (collectively hereinafter, "ASSETS") at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

20. The total amount to be attached pursuant to the calculations set forth above is **$346,066.27.**

WHEREFORE, Plaintiff W-O MARINE PTE LTD. prays:

a.   That process in due form of law according to the practice of this Court may issue against Defendant citing it to appear and answer the foregoing;

b.   That if Defendant cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of Defendant up to and including $346,066.27 be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of Defendants (collectively hereinafter, "ASSETS"), at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein;

c.   That this Court retain jurisdiction over the matter for any subsequent enforcement action as may be necessary; and

d.   For such other, further and different relief, as the Court may deem just and proper in the premises.

Dated: New York, New York
      June 25, 2008

                        FREEHILL HOGAN & MAHAR, LLP
                        Attorneys for Plaintiff
                        W-O MARINE PTE. LTD.

                        By:                         
                             Peter J. Gutowski (PG 2200)
                             Barbara G. Carnevale (1651)
                             80 Pine Street
                             New York, NY  10005
                             (212) 425-1900

## ATTORNEY VERIFICATION

State of New York   )
                  ) ss.:
County of New York  )

      PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

      1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

      2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

      3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                   Peter J. Gutowski

Sworn to before me this
25th day of June, 2008

_____
Notary Public

HAZEL S. ROSENTHAL
Notary Public, State of New York
No. 01RO4641178
Qualified in Queens County
Certified in New York County
Commission Expires Dec. 31, 2010

# Ex. A

**From:** Small - RIVERLAKE SHIPPING
  < chart ; V. Gautam ; satish
**Sent:** Tuesday, November 20, 2007 10:32 PM
**Subject:** W-O Hanahn - Tradhol Inter. - Recap fully fixed

Good afternoon,

WE ARE PLEASED TO RECAP FIXTURE OF M/T 'W-O HANAHN' UNDER
FOLLOWING TERMS AND CONDITIONS WITH ALL SUBJECTS LIFTED :

CHARTER-PARTY DATE : 20.11.2007

CHARTER-PARTY FORM : ASBATANKVOY
CHARTERERS         : TRADHOL INTERNATIONAL, SPAIN
DISPONENT OWNERS : W-O MARINE PTE LTD., SINGAPORE
VESSEL             : MT W-O HANAHN
                     AS PER Q88 ATTACHED


ITINERARY          : VESSEL SAILED PARAMONGA 7TH NOVEMBER 2007.
                     VESSEL WILL SAIL FROM SUPE TONIGHT,
                     ETA CALLAO 20 18:00, ETS 21ST
                     ETA PAITA 23RD, ETS 24TH
                     ETA BUENA VENTURA 26TH, ETS 27TH
                     ETA BALBOA 29TH, ETS 30TH
                     ETA GUAYABAL 3RD-4TH DECEMBER 2007


LAST 3             : AS PER STOWAGE PLAN ATTACHED

CARGO              : 2 GRADE INDUSTRAL/POTABLE ETHANOL WVNS
                     INTENTION : 9'000 CBM INDUSTRIAL
                                 BALANCE POTABLE
QUANTITY           : MIN/MAX 14000 CBM
                     OPTION TO LOAD UPTO VESSEL FULL CUBIC CAPACITY (WVNS)
                     TO BE DECLARED BY CHARTERERS LATEST NOON FRIDAY
                     THE 23RD NOVEMBER
LOAD               : 1 SP/SB GUAYABAL + 1 SP/SB CIENFUEGOS
DISCHARGE          : 1 SP/SB LAGOS AND/OR 1 SP/SB GHANA
LAYCAN             : 01-05 DECEMBER 2007
FREIGHT            : USD 775,000 LPSM IF MAX 14'000 CBM

From: Small - RIVERLAKE SHIPPING
c chart ; V. Gautam ; satish
Sent: Tuesday, November 20, 2007 10:32 PM
Subject: W-O Hanahn - Tradhol Inter. - Recap fully fixed

Good afternoon,

WE ARE PLEASED TO RECAP FIXTURE OF M/T 'W-O HANAHN' UNDER
FOLLOWING TERMS AND CONDITIONS WITH ALL SUBJECTS LIFTED :

CHARTER-PARTY DATE : 20.11.2007

CHARTER-PARTY FORM : ASBATANKVOY
CHARTERERS        : TRADHOL INTERNATIONAL, SPAIN
DISPONENT OWNERS : W-O MARINE PTE LTD., SINGAPORE
VESSEL            : MT W-O HANAHN
                    AS PER Q88 ATTACHED


ITINERARY         : VESSEL SAILED PARAMONGA 7TH NOVEMBER 2007.
                    VESSEL WILL SAIL FROM SUPE TONIGHT,
                    ETA CALLAO 20 18:00, ETS 21ST
                    ETA PAITA 23RD, ETS 24TH
                    ETA BUENA VENTURA 26TH, ETS 27TH
                    ETA BALBOA 29TH, ETS 30TH
                    ETA GUAYABAL 3RD-4TH DECEMBER 2007


LAST 3            : AS PER STOWAGE PLAN ATTACHED

CARGO             : 2 GRADE INDUSTRAL/POTABLE ETHANOL WVNS
                    INTENTION : 9'000 CBM INDUSTRIAL
                              BALANCE POTABLE
QUANTITY          : MIN/MAX 14000 CBM
                    OPTION TO LOAD UPTO VESSEL FULL CUBIC CAPACITY (WVNS)
                    TO BE DECLARED BY CHARTERERS LATEST NOON FRIDAY
                    THE 23RD NOVEMBER
LOAD              : 1 SP/SB GUAYABAL + 1 SP/SB CIENFUEGOS
DISCHARGE         : 1 SP/SB LAGOS AND/OR 1 SP/SB GHANA
LAYCAN            : 01-05 DECEMBER 2007
FREIGHT           : USD 775,000 LPSM IF MAX 14'000 CBM

USD 835,000 LPSM IF UPTO FCC
CHARTERERS HAVE THE OPTIONS TO PAY IN EURO WITH
EXCHANGE RATE    : 1.4785 EURO/USD, AS PER EUROPEAN CENTRAL BANK
http://www.ecb.int/stats/exchange/eurofxref/html/index.en.html

IF CHARTERERS LOAD LESS THAN 14'000 CBM THE REMAINING SPACE
UPTO 14'000 CBM IS NOT TO BE USED WITHOUT CHARTERERS CONSENT.


DEMURRAGE     : USD 17,250 PDPR
LAYTIME       : LOAD 150 MTPH, DISCHARGE 150 MTPH SHINC REV
COMM          : TOTAL 5% ON FRT/DFRT/DEM PAYBLE BY OWNERS
                SPLITED AS FOLLOWS
                2.5% TO DORIC SHIPBROKERS S.A., GREECE
                2.5% TO RIVERLAKE SHIPPING S.A., SWITZERLAND


GA/ARBITRATION LONDON, ENGLSH LAW TO APPLY
ALL TAXES AND/OR DUES AND/OR LEVIES ON FREIGHT AND/OR CARGO
TO BE FOR CHARTERERS ACCOUNT AND TO SETTLED DIRECTLY BY THEM
ALL TAX ON VESSEL TO BE FOR OWNERS ACCNT AND SETTLED BY OWNERS
YORK ANTWERP RULES 1994 AND ANY AMMENDMENTS THERAFTER TO APPLY.
BASIC WAR RISK ON OWNERS ACCOUNT AND ANY ADDITIONAL/EXTRA
WAR ISK PREMIUM TO BE FOR CHARTERERS ACCOUNT.
FREIGHT PAYMENT 10 BANKING DAYS UPON S/R/BLS AND OWNERS PROVIDING
SIGNED COPY OF FREIGHT INVOICE BY FAX OR BY MAIL BUT IN ANY CASE BBB.
CHARTS AGENTS BOTH ENDS, IN WAF FREE D/A'S TO OWNERS AND AT
LOAD PORTS PROVIDED COMPETITVE


OWNERS WEST AFRICA CLAUSES

1) EXTRA WAR RISK INSURANCE IF ANY TO BE FOR CHRS ACCOUNT
2) ANY TAXES AND OR DUES ON CARGO AND OR FREIGHT INCL.
   BUT NOT LIMITED TO NIGERIAN CONSERVANCY DUES, HANDLING
   CHARGES AND NMA LEVY TO BE FOR CHRRS ACCOUNT AND TO BE
   SETTLED DIRECTLY BY THEM
3) NIGERIAN CERTIFICATE OF COMPLIANCE - CHRRS TO
   ARRANGE FOR SAME AT THEIR TIME AND EXPENSE. SHOULD ANY
   DELAYS BE INCURRED SAME TO BE FOR CHRRS ACCOUNT.
4) ANY TIME AWAITING NAVAL CLEARANCE TO BE FOR CHRRS ACCOUNT.
5) ANY DELAYS IN OBTAINING NIGERIAN TASK FORCE
   PERMISSION TO ENTER NIGERIAN WATERS TO COUNT IN FULL
   AS USED LAYTIME OR DEMURRAGE, IF ON DEMURRAGE.
6) NMA FEE, IF IMPOSED, NOT TO BE FOR OWNRS ACCOUNT.
   CHRRS ARE TO BE RESPONSIBLE FOR THE NMA APPROVALS.
7) IF ANY VETTING ARRANGEMENT IS OR SHOULD BECOME
   NECESSARY TO CALL NIGERIA CHRS TO ARRANGE FOR SAME
   AT THEIR TIME AND EXPENSES. SHOULD ANY DELAYS BE
   INCURRED SAME TO BE FOR CHRS ACCOUNT
8) ANY DELAY IN NIGERIAN/W.AFRICA IN BERTHING,
   DISCHARGING OR SAILING DUE TO STRIKES,
   LOCKOUTS, RESTRAINTS, WORK-TO-RULE, GO SLOW AND OF
   THEIR CAUSE OVER WHICH OWNERS / MASTER / CREW / HAVE
   TO CONTROL TO COUNT AS LAYTIME OR DEMURRAGE IF ON
   DEMURRAGE AND EXPENSES SO INCURRED IF ANY TO BE FOR
   CHRRS ACCOUNT. BAD WEATHER 50/50 BETWEEN CHARTS AND
   OWNERS

9)  UNDISPUTED DEMURRAGE INCURRED AT WEST AFRICA ISCHARGE
    PRORT/PORT(S) TO BE PAID EVERY 7 DAYS N ARREARS.

AMMENDED/AGREED RIDER TERMS ATTACHED.

Best Regards,
Didier Fert

---

**RIVERLAKE SHIPPING SA**
26, rue du Mont-Blanc | CH-1201 Geneva | Phone +41 22 906 79 32 | Fax +41 22 906 79 33
www.riverlake.ch | small@riverlake.ch

Certified ISO 9001:2000 by BVQI - certificate N° 150628

**DISCLAIMER**
This E-mail is private and confidential and may be covered by legal professional privilege. It is
therefore only intended for the addressee(s). If you are not one of those persons you must not read,
py, store, disclose, use or distribute its contents. Please also contact the sender immediately and
delete the original.

## Tradhol International Rider Terms

1.  OK
2.  OK
3.  Delete and Insert As  per main terms Agreed
4.  OK
5.  Line 2 to 4 : Delete  " On this voyage .... in any other port."
6.  Delete and insert As per main terms agreed
7.  Delete and insert As per main terms agreed
8.  Line 1 : After "shifting" Insert " from anchorage to first berth"
9.  OK
10. 10.1 Line 2 : Delete 0800 hrs and insert 0600 Hrs
    Line 2 : Delete 0800 hrs and insert 0600 Hrs
    Line 2 : Delete 'delivery" insert "tendering"
11. OK
12. OK
13. Line 2: Delete one month and insert "60 days"
14. Delete " if required by the Master to do so"
15. Line 3: Delete " owners to provide suitable hoses and fenders if required"
    Insert at the end " Transshipment/STS operations to be carried out as per latest
    OCIMF guide for STS operations."
16. Delete and Insert as per main terms agreed.
17. Line 2: Delete "0" insert "1"
18. Delete and Maintain as per printed ASBATANKVOY
19. OK
20. Line 1: insert "known" before Law
    Line 4: Delete " Damages"
21. OK
22. 22.1.1 Line 1: Delete " on fixing" insert " upon receiving lawful voyage orders"
23. OK
24. Line 1: Delete "3 last cargoes"
    Insert at the end " owner to provide list of last 3 cargoes carried to Charterers and
    Charterers to lift subjects only after ascertaining suitability of such cargoes ."
25. Add at the end " except during STS/Transshipment/Lightening operations when
    time to count in full weather permitting or not."
26. Delete
27. Line 2: Insert " facsimile followed by original " before " letter of Indemnity"
    Line 2 : After " letter of indemnity" Insert " on their letter head"
    Add at the end " duly signed and stamped by their authorized signatory"
28. Lines 4 to 6: Delete " but once final blending......... in such specification."
    Add at the end " Charterers to indemnify and hold Owners harmless for any
    change in quantity, quality including third party liability. Charterers to furnish a
    LOI on their letter head as per owners P&I club wording duly signed and stamped
    by their authorized signatory.
29. OK

30. Line 2: After "letter" insert "e-mail"
    Line 8 to 10: Delete " However, whether delay is caused.... As laytime or as time on demurrage."
31. Delete and maintain as per printed ASBATANKVOY
32. Delete
33. OK
34. Delete & insert "BIMCO ISPS Clause to apply"

Owners Protective Clause

-   IF BY THE TIME VESSEL SAILS FROM LAST DISCHARGE PORT OR
EN-ROUTE TO SAME IT BECOMES APPARENT THAT VESSEL WILL MISS
HER CANCELLING DATE,OWNERS TO ADVISE CHARTERERS IMMEDIATELY
WITH A NEW 3 DAYS LAY/CAN SPREAD. CHARTERERES TO ADVISE
WITHIN 24 HOURS OF RECEIPT OF SUCH NOTICE WHETHER THEY WISH
TO MAINTAIN  FIXTURE ON NEW DATES OR CANCEL, WITHOUT
RECOURSE ON EITHER PARTY. FAILING TO  NOMINATE EITHER/OR
THE CP IS DEEMED MAINTAINED AS PER SUGGESTED NEW 3 DAYS
SPREAD

ATT172473

W-O MARINE PTE LTD, Singapore, Singapore

# TRADHOL INTERNACIONAL ADDITIONAL SHIPPING TERMS AND CLAUSES
### Last Revision July 2007

1. **GOVERNING CHARTER PARTY:** The current governing charter party to be the ASBATANK form.

2. **GOVERNING LAW:** UK Law to apply. General Average and Arbitration to be settled in London under English law.

3. **RULES:** York/Antwerp Rules 1994 shall apply to this Charter Party.

4. **CONFIDENTIALITY CLAUSE:** The terms and conditions of this Charter shall be kept strictly private and confidential amongst Owners, Charters and brokers involved.

5. **EXCLUSIVITY:** The cargo loaded under this Charter shall be kept entirely segregated from other cargoes loaded or on board the vessel throughout loading and voyage discharging. On this vessel and for this voyage no more ethanol will be loaded from any other charters in any other port.

6. **AGENCY:** Charterer's agents at loading and discharging port. Owners shall appoint and pay for the agent nominated by charter.

7. **PAYMENT:** Freight payable directly to owners account always before breaking bulk last discharge port.

8. **DEBALLASTING/SHIFTING CLAUSE:** Deballasting and shifting time never count as used laytime, even if vessel already on demurrage.

9. **WEATHER AND LAYTIME CLAUSE:** Berthing and/or shifting delays due to weather conditions at load and/or discharge port(s) shall count as one-half laytime or if on demurrage, one-half demurrage, provided vessel is in all other respects ready and capable of loading/discharging.

10. **NOTICE OF READINESS CLAUSE (N.O.R):**

    **10.1.** If vessel arrives to the loading port prior the commencement of the laycan, laytime shall not start to count until 08.00 hours of the first day, unless used.

    **10.2.** If night berthing or shifting is prohibited at load or discharge ports or berths, and if the vessel arrives after sunset, then NOR can only be tendered at 08.00 the following day.

    **10.3.** Laytime or time on demurrage shall not begin to run at any port until at least 6 hours after delivery of N.O.R.

    **10.4.** Acceptance of NOR shall not constitute a waiver of any of Charter's rights under this Charter.

11. **LAYTIME**

    **11.1.** Laytime shall always be reversible.

**TRADHOL INTERNACIONAL ADDITIONAL SHIPPING TERMS AND CLAUSES**
Last Revision July 2007

----------------------------------------------------------------------------------------------

11.2. Delays to the vessel after arrival in berth/anchorage incurred by reason of operational safety in or about the plant of the Charter, supplier, shipper or consignee of the cargo or the Charters being unable to bring the cargo alongside the vessel because of strikes or other occurrences prior to the agreed commencement of loading shall count as one-half laytime (or be compensated for at one-half the demurrage rate if allowed laytime has expired).

12. **SUSPENSION OF LAYTIME:** Time shall not count as laytime or, if the vessel is on demurrage, for demurrage, when spent or lost on an inward passage moving from anchorage, even if lightering has taken place at the anchorage, until the vessel is securely moored at the berth or other loading or discharging place specified by Charters.

13. **DEMURRAGE TIME BAR CLAUSE:** Owners to present Demurrage Claim within 90 days from completion discharge and advise one month after completion of discharge that there will be a demurrage claim. Otherwise any such claim to be considered waived by Owners.

14. **SAMPLES:** Charters' surveyor to supply vessel with sealed cargo samples, in requested by Master to do so.

15. **TRANSHIPMENTS:** Charter has the option to load and/or discharge any portion of the specified cargo from/into coastal vessel(s) / barge(s). Transhipment, if any, at Charters' responsibility, time and cost. Owners to provide suitable hoses and fenders if requested.

16. **TAXES:** Any taxes and/or dues on cargo and/or freight including Inframar and Infraport Tax to be for charterers account. Any taxes and/or dues on vessel included but not limited to dockage, wharfage, port utilization taxes PUT, Merchant Marine Renewal tax (MRTAX), etc, to be for Owners' account.

17. **CLEANING:** The cargo tanks, lines, pumps and valves of the Vessel will show 0 ppm of Hydrocarbons and 0 ppm of Chlorides. In case the vessel's tanks/load lines have been rejected by charteres'/shippers' inspector, the laytime shall commence only in the moment that charters'/shippers' inspector confirm the approval of the vessel's tanks / vessel lines. The laytime will commence upon the expirations of six hours notice after receipt of such notice or when loading and/or discharging already commenced, whichever first occurs, in case the tanks are accepted in the 1st inspection. Cleaning to C.I.S. and vessel to arrive load port / berth with her cargo tanks, lines, pumps and valves fully clean and dry and completely free of odour, smells, oleos and residues of previous cargoes only for tanks, lines, pumps and valves used for above cargo.

The Master of the vessel is bound to keep the vessel's tanks, pumps and lines thoroughly clean and dry and free of smell, odour, oleos and residues of previous cargoes suitable for receiving the cargo loaded under this Charter Party. Should Charter' Inspector at the loading port not be satisfied that the vessel's tanks, pumps and lines are clean and dry and free of smell, odour, oleos and residues of previous cargoes as aforesaid, the Owners to clean them in their time and at their expenses without prejudice to Master's responsibility under this clause.

18. **WAR RISK:** Chamber of Shipping War Risk clauses (tankers) 1952, 1/2/3, New Jason clause, Both-to-Blame Collision clause and Chamber of Shipping Voyage Charter Clause Paramount

----------------------------------------------------------------------------------------------

## TRADHOL INTERNACIONAL ADDITIONAL SHIPPING TERMS AND CLAUSES
### Last Revision July 2007
----------------------------------------------------------------------------------------------------

1958 as per attached rider, are deemed to be herein incorporated and Bills of Lading signed under this Charter Party shall include or shall be deemed to include such clauses.

19. **DISCHARGE:** Owners guarantee minimum discharge 150 mtons per hour shore facilities permitting or to maintain **100 PSI** at ship's connection.

20. **VESSEL:** Owners guarantee vessel built equipped and manned in full respect of all law and relevant authorities requirements for the carriage of cargo(es) as specified in relevant Charter Party. Furthermore, the vessel carried all necessary certificates and documents (in force) and will perform according to the legal requirements at her own costs. All cost, damages incurred due to non-fulfilment of this clause to be Owners' account. Owners warrant vessel is entered with first class P&I Club and is fully covered for owners normal P/I risks without any special limitations and will remain so throughout the course of this Charter.

21. **BREACH:** Time not to count against laytime when lost as a result of Owners' breach of Charter.

22. **NOTICE CLAUSE:**

22.1. ETA notices for loading port;

    **22.1.1.**  Owners or master to give approximate notice on fixing, followed by 10/5 days, 72/48/24 hours notice of vessel's expected date and time of arrival at loading port to the appointed agent there, charters and broker.

    **22.1.2.**  If the eta should change by 12 (twelve) or more hours in respect of the time advised in the last notice, master to send an updated notice indicating the reason for the delay.

    **22.1.3.**  If the arrival time to the loading port is less than 5 days from the date the vessel has been fixed, the first eta notice shall be given on fixing and the other eta notices should be given at 24 hours intervals.

    **22.1.4.**  In the event of owners or master failing to give the aforementioned notices, charters are to be allowed 12 (twelve) hours extra laytime for loading for any missing notice.

22.2. ETA notices for discharging port

    **22.2.1.**  Owners or master to give notice of eta at port of discharge on sailing loading port together with exact quantity of cargo loaded in metric tons, followed by further 10/7/5 days, 72/48/24 hours notice of vessel's expected date and time of arrival at port of discharge to appointed agent, charters and broker.

    **22.2.2.**  If the eta should change by 12 (twelve) or more hours in respect of the time advised in the last notice, master to send an updated notice indicating the reason for the delay.

## TRADHOL INTERNACIONAL ADDITIONAL SHIPPING TERMS AND CLAUSES
### Last Revision July 2007

22.2.3.    If the voyage to discharge port is shorter than 5 days, first eta notice should be sent upon sailing from the load port and the other eta notices should be sent at 24 hours intervals.

22.2.4.    In the event of owners or master failing to give the aforementioned notices, charters are to be allowed 12 (twelve) hours extra laytime for discharging for any missing notice.

23.  **TANKS:** Ship tanks to be stainless steel and/or epoxy coated and/or zinc coated and / or marine line.

24.  **STOWAGE/LAST CARGOES CLAUSE:** Stowage / 3 Last cargoes to be subject to Charters/Receivers' approval.

25.  **CONOCO:** Conoco Weather Clause to apply.

26.  **BILLS OF LADING CLAUSE :** Owners agree to discharge cargo against one original bill of lading placed on board or presented at discharge port. Master shall sign receipt for one original bill of lading and release to receivers via appointed ship's agents at discharge port.

   If part of the cargo is finally sold to other receiver different than shown in original Bill of lading, owners agree to void and null bills of lading issued and re issue new bill of lading accordingly. For that purpose all old original bills of ladings will be returned to owners or agents offices.

27.  **LOI :** If original Bills of Lading not arrive before vessels arrival at discharge port Owners to agree to discharge cargo against Charter's single Letter of Indemnity with Owner's P&I Club wording, without bank guarantee.

28.  **DENATURANTS CLAUSE:** Should Charters need, two or more parcels and/or any denaturant(s) to be blended onboard the performing vessel as per Charters' instructions and under Charters' surveyors' supervision. In this case, Owners not to be responsible for any change on the specifications caused by or as a result of such blending but, once final blending is accomplished and final results are found by surveyors, Owners to remain responsible thereafter for any change in such specifications.

29.  **ITOPF:** Owners warrant that throughout the duration of this Charter the vessel will be as follows:

   29.1. Owned or demised chartered by a member of the "International Tanker Owners Pollution Federation Limited" (ITOPF)

   29.2. Entered in protection and indemnity (P&I) Club. Owner warrants however that the vessel will only be entered in a P&I Club within the international group of P&I.

30.  **ARCO:** Upon arrival at customary anchorages at each port of loading or discharge, the Master shall give the charter notice by letter, telegraph, wireless or telephone that the vessel is ready to load or discharge cargo, berth or no berth, and laytime, or, if vessel is on demurrage, time on

**TRADHOL INTERNACIONAL ADDITIONAL SHIPPING TERMS AND CLAUSES**
Last Revision July 2007

---

demurrage shall commence upon the expiration of 6 hours after receipt of such notice, or upon the vessel's arrival in berth (i.e., finished mooring when at a sea loading or discharging terminal and all fast when loading or discharging alongside a wharf or when barge lighters or lightering vessel is alongside when lightering), whichever first occurs. However, where delay is caused to vessel getting into berth after giving notice of readiness for any reason whatsoever over which charter has no control, such delay shall not count as laytime or as time on demurrage.

31. **FORCE MAJEURE:** The second sentence of the "General Exceptions" clause (Part II, Clause 19) shall be amended as follows:

Neither Party shall be liable for damages or otherwise to the extent that its ability to fulfil any provision of this Charter Party is delayed, hindered or prevented by, without limitation, act of God, fire, explosion, storm, flood, war (declared or undeclared), rebellion, revolution, invasion hostilities, martial law, riot, labour disputes of any kind, strike, lockout or injunction (whether or not such labour dispute is in the reasonable control of such party), perils of the sea or accident of navigation, compliance with any law, regulations or order imposed by any state or local authorities, breakdown of any plant of Charter's customers or suppliers, shutdown of any plant of Charter's shippers or receivers caused by government action or inability to obtain fuel, power or raw materials, breakdown of loading or receiving facilities, embargoes or other import or export restrictions, closing of canals or rivers, blockage of canals, rivers, ports or waterways, any event, matter or thing wherever occurring and whether or not of the same class or kind as those set forth which by the exercise of due diligence the party concerned is unable to overcome, whether or not such occurrence is reasonably foreseeable.

32. **PROVEN DAMAGES:** Penalty for non-performance of this Charter Party shall be based upon proven amount of damages and reasonable costs of recovering same.

33. **INTERPRETATION:** The interpretation of this Charter and the rights and obligations of the parties thereto shall be governed by the laws applicable to charter parties made in the City of London. The headings of Clauses and Paragraphs are for convenience of reference only and shall not affect the interpretation of this Charter. No modification, waiver or discharge of any term of this Charter shall be valid unless in writing and signed by the party to be charged therewith. Notwithstanding anything in this Charter to the contrary, this Charter shall not be interpreted or applied so as to require Owner or Charters to do, or to refrain from doing, anything which would constitute a violation of, or result in a loss of economic benefit under, United States anti-boycott laws and regulations.

34. **ISPS Clause for Voyage Charter Parties**

34.1. **OWNER'S OBLIGATIONS:** The Owner shall comply with obligations imposed upon it or the vessel under the International Code for the Security of Ships and of Port Facilities ("the ISPS Code") and any other laws and regulations relating to the security of the vessel and port, as in force and of mandatory application to the vessel and/or port at the date of this charter., The ISPS Code and the aforesaid laws and regulations shall hereafter be referred to collectively as "the Relevant Security Regulations". The Owner shall upon request promptly provide the Charters with:

34.1.1. A copy of the International Ship Security Certificate issued under the ISPS Code.

**TRADHOL INTERNACIONAL ADDITIONAL SHIPPING TERMS AND CLAUSES**
Last Revision July 2007

--------------------------------------------------------------------------------------------------------

34.1.2. The details of the Company Security Officer.

**34.2. CHARTERER'S OBLIGATIONS:** The Charters shall promptly provide the following information so that the Owner may comply with any requirements arising in relation to the application of the Relevant Security Regulations or any other applicable security regulations that come into force after the date of this charter ("Other Security Regulations"), including any measures which may be required by any port facility or relevant authority:

34.2.1. The identity and contact details of all parties to any contracts relating to the Vessel and her employment where such contracts have been entered into by the Charters, by any sub-charters, or by any agents appointed by them, or in the name of the Owner at the direction of the Charters or any sub-charters.

34.2.2. The identity and contact details of any personnel (other than those directly employed by the Owner), and employers or principals thereof, on or about the Vessel pursuant to this charter party or any other contracts referred to in sub-clause (32.2.1) above, and any other relevant information relating to the Vessel's cargo or its employment requested by the Owner.

**34.3. DELAY:** Any delay whatsoever arising in relation to the application of the Relevant Security Regulations or Other Security Regulations, including any ensures required by any port facility or relevant authority, shall:

34.3.1. If the vessel is on laytime or on demurrage, count as laytime or time on demurrage as the case may be; and

34.3.2. In any other case, be compensated for by the Charters at the demurrage rate, save that time lost due to Owner's failure to comply with obligations imposed upon it or the Vessel under the Relevant Security Regulations shall be for Owner's account.

**34.4. ALTERNATIVE PORTS:** If, due to the application of the Relevant Security Regulations or Other Security Regulations, including any measures required by any port facility or any relevant authority, the Vessel is prevented for more than 5 (five) days from entering, or loading or discharging cargo at any of the nominated or agreed ports under the charter party, the Owner may request the Charters to nominate an alternative safe port or ports. If the Charter fails to nominate such a port or ports within 48 hours of receiving Owner's request, the Owner may discharge the cargo at any port of its choice or, if there is no cargo on board, terminate the charter party with immediate effect. The Charter shall reimburse the Owner at the demurrage rate for any additional steaming time or delay which may result there from and shall bear all related additional costs and expenses including but not limited to bunkers and port costs. Such discharging shall be deemed to be due fulfilment of the contract or contracts of affreightment and owners shall be entitled to freight as if discharging had been effected as the port or ports originally nominated or to which the vessel may have been properly ordered under the provisions of this charter or bills of lading issued pursuant to this charter.

**TRADHOL INTERNACIONAL ADDITIONAL SHIPPING TERMS AND CLAUSES**
Last Revision July 2007

---------------------------------------------------------------------------------

For the owners:

……………………….

For the charters:

………………………
Tradhol Internacional